**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | | |
|---|---|---|
| **JAMES A. LESTER,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:10cv00012 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, James A. Lester, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq*. (West 2003 & Supp. 2010). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

-1-

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Lester protectively filed his applications for DIB and SSI on February 18, 2005, alleging disability as of October 24, 2004, due to back problems, problems with his left leg and headaches. (Record, ("R."), at 81-83, 97, 308-11, 323.) The claims were denied initially and on reconsideration. (R. at 68-74, 313-15, 317-19.) Lester then requested a hearing before an administrative law judge, ("ALJ"). (R. at 77.) The hearing was held on August 31, 2006, at which Lester was represented by counsel. (R. at 453-95.)

By decision dated February 22, 2007, the ALJ denied Lester's claims. (R. at 323-38.) Lester sought review by the Appeals Council, and the Appeals Council remanded his claims to the ALJ on March 31, 2008. (R. at 339-41.) Additional hearings before the ALJ were held on August 15, 2008, and March 18, 2009, at which Lester was represented by counsel. (R. at 496-555.)

By decision dated June 1, 2009, the ALJ again denied Lester's claims. (R. at 18-36.) The ALJ found that Lester met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2009. (R. at 20.) The ALJ also found that Lester had not engaged in substantial gainful activity since October 24, 2004, the alleged onset date. (R. at 21.) The ALJ determined that

the medical evidence established that Lester suffered from severe impairments, including a degenerative disc disease with two prior lumbar spinal surgeries, headaches, depression and borderline intellectual functioning, but he found that Lester did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21-30.) The ALJ found that Lester had the residual functional capacity to perform light work[1] that did not require any climbing of ladders/ropes/scaffolds or exposure to hazards, more than occasional use of ramps and stairs, stooping, kneeling, crouching and crawling. (R. at 31.) The ALJ found that Lester could understand, retain and follow simple job instructions, perform one- and two-step tasks, carry out very short and simple instructions, maintain attention and concentration for extended periods of time with no more than occasional disruptions, maintain regular attendance and be punctual, complete a normal workday and workweek without exacerbation of psychological symptoms, maintain socially appropriate behavior, perform personal care functions needed to maintain an acceptable level of personal hygiene, ask simple questions and accept instruction, sustain an ordinary routine and adapt to routine changes without special instruction and would not require special supervision in order to sustain a work routine. (R. at 31.) The ALJ found that Lester was unable to perform his past relevant work, other than his work as a security guard. (R. at 34.) Based on Lester's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Lester could perform, including jobs as an office clerk, a cashier and

---

[1]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2010).

a food preparation worker. (R. at 34-36.) Thus, the ALJ found that Lester was not under a disability as defined under the Act and was not eligible for benefits. (R. at 36.) *See* 20 C.F.R. §§ 404.1520(f), (g), 416.920(f), (g) (2010).

After the ALJ issued his decision, Lester pursued his administrative appeals, (R. at 14), but the Appeals Council denied his request for review. (R. at 8-11.) Lester then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2010). The case is before this court on Lester's motion for summary judgment filed September 10, 2010, and the Commissioner's motion for summary judgment filed October 12, 2010.

## II. Analysis

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2010).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2010); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Lester argues that substantial evidence does not support the ALJ's finding that he could perform his past relevant work as a security guard or perform other jobs. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 9-16.) In particular, Lester argues that the ALJ erred in his weighing of the psychological evidence. (Plaintiff's Brief at 12-16.) As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Lester does not challenge the ALJ's findings regarding his physical residual functional capacity. Instead, he challenges the ALJ's weighing of the psychological evidence and the ALJ's findings as to his mental residual functional capacity. As stated above, the ALJ found that Lester could understand, retain and follow simple job instructions, perform one- and two-step tasks, carry out very short and simple instructions, maintain attention and concentration for extended periods of time with no more than occasional disruptions, maintain regular attendance and be punctual, complete a normal workday and workweek without exacerbation of psychological symptoms, maintain socially appropriate behavior, perform personal care functions needed to maintain an acceptable level of personal hygiene, ask simple questions and accept instruction, sustain an ordinary routine and adapt to routine changes without special instruction and would not require special supervision in order to sustain a work routine. (R. at 31.)

It is important to note that the record does not contain any opinion from a treating psychiatrist, psychologist or other mental health worker as to Lester's

mental work-related abilities. In fact, the only treatment records from any mental health professional come from a four-day admission to the Laurels for inpatient treatment in November 2008, and these records do not address Lester's work-related abilities. (R. at 402-24.) The entirety of the evidence on this issue is comprised of the opinions of two consulting examining psychologists and two nonexamining state agency psychologists. In reaching his finding at to Lester's mental residual functional capacity, the ALJ gave little weight to the opinions of the two examining psychologists, (R. at 33), and stated that the opinions of the nonexamining state agency psychologists supported his findings. (R. at 34.) Based on my review of the record, I find that the opinions of the state agency psychologists do not provide substantial evidence to support the ALJ's finding on this issue.

Melinda Wyatt, M.S., performed a psychological evaluation of Lester on August 11, 2005, at the request of the state agency. (R. at 206-12.) Wyatt diagnosed Lester as suffering with a major depressive disorder, single episode. (R. at 211.) Lester told Wyatt that he had begun experiencing depression beginning in October 2004 when he learned that he needed back surgery. (R. at 207.) Lester reported that he experienced irritability, agitation, impaired decision making, memory and concentration. (R. at 207.) He also stated that he experienced a lack of initiative, nervousness, insomnia, fatigue and loss of interest and that he was becoming increasingly withdrawn. (R. at 207.)

Wyatt stated that Lester was cooperative, pleasant and appeared motivated throughout her evaluation. (R. at 209.) She found no evidence of hallucinations, delusions, preoccupation, obsessions, phobias or perceptual abnormalities. (R. at

209-10.) She found Lester's mood depressed and his affect flat. (R. at 210.) Wyatt found Lester's judgment mildly deficient, his immediate recall within normal limits, his recent memory markedly deficient and his remote recall mildly impaired. (R. at 210.) Wyatt administered the Wechsler Adult Intelligence Scale – III, ("WAIS-III"). (R. at 210-11.) Wyatt stated that she thought that Lester's scores were possibly an underestimate of his intellectual functioning because of physical discomfort and reported problems with visual acuity. (R. at 211.)

Wyatt stated that it was unlikely that Lester could complete a normal workday or workweek without interruptions due to his psychological symptoms. (R. at 212.) She also stated that it was unlikely that Lester could perform work activities on a consistent basis and that Lester's ability to interact appropriately with coworkers and the public was affected. (R. at 212.) Wyatt also stated that Lester would experience some difficulty dealing with the usual stressors encountered in competitive employment. (R. at 212.)

On August 18, 2005, R. J. Milan, Jr., Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), on Lester. (R. at 222-35.) Milan stated that Lester suffered from an affective disorder which required a residual functional capacity assessment. (R. at 222.) Milan stated that Lester experienced moderate difficulties in social functioning and moderate difficulties in maintaining concentration, persistence or pace. (R. at 232.) Milan also completed a Mental Residual Functional Capacity Assessment for Lester on August 18, 2005. (R. at 218-21.) On this assessment, Milan stated that Lester was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities

within a schedule, maintain regular attendance, and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and to interact appropriately with the general public. (R. at 218-19.)

> In a narrative report attached to the assessment, however, Milan stated:
>
> The claimant can understand, retain, and follow simple job instructions, i.e., perform one and two step [sic] tasks. He is able to carry out very short and simple instructions. Furthermore, he is able to maintain concentration and attention for extended periods of time, with no more than occasional disruptions. He would be able to maintain regular attendance and be punctual, completing a normal workday and workweek without exacerbation of psychological symptoms. Moreover, he would not require special supervision in order to sustain a work routine. He is able to maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene. He is capable of asking simple questions and accepting instruction. He is able to maintain socially appropriate behavior. He can sustain an ordinary routine and adapt to routine changes without special supervision.

(R. at 220.) Milan's assessment and his PTRF were reviewed and affirmed by E. Hugh Tenison, another state agency psychologist, on October 31, 2005. (R. at 221-222.)

On April 28, 2006, Andrew L. Steward, Ph.D., a licensed clinical psychologist, evaluated Lester at the request of Lester's attorney. (R. at 275-82.) Steward diagnosed Lester with major depressive disorder, single episode, severe without psychotic features, a generalized anxiety disorder and borderline

intellectual functioning. (R. at 281.) Lester reported that he completed the tenth grade in school and attended special education classes in reading and math. (R. at 276.) Lester complained of being nervous all of the time and depressed most of the time. (R. at 277.) He stated that crowds, children and noise bothered him. (R. at 277.) Lester stated that he was irritable and that his memory was poor. (R. at 277.) Lester stated that he cried a lot and felt useless, worthless, helpless and hopeless. (R. at 277.)

Steward administered the WAIS-III, on which Lester received a verbal IQ score of 86, a performance IQ score of 83 and a full-scale IQ score of 84, which Steward stated placed him at the high end of borderline intellectual functioning. (R. at 279.) On the Beck Anxiety Inventory, Lester's score fell within the severe anxiety range. (R at 280.) On the Beck Depression Inventory-II, Lester's score fell within the severe depression range. (R. at 280.) Lester's performance on the Minnesota Multiphasic Personality Inventory-2 revealed a significantly elevated depression scale. (R. at 280.)

Steward noted that Lester's hands shook. (R. at 275.) He stated that Lester's affect was constricted and his mood was anxious and dysphoric. (R. at 276.) Steward found Lester's mental functions to be somewhat depressed but found his memory functions to be average. (R. at 276.) Steward completed a Medical Source Statement Of Ability To Do Work-Related Activities (Mental). (R at 283-85.) Steward stated that Lester had a seriously limited, but not precluded, ability to understand, remember and carry out complex job instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual, to complete a normal workday or

workweek and to perform at a consistent pace. (R. at 283.) Steward also stated that Lester's ability to respond appropriately to supervisors, co-workers and work pressures was affected by his mental impairments, but he did not indicate to what extent. (R. at 284.)

On November 10, 2008, Lester was admitted for inpatient psychiatric treatment at the Laurels for crisis stabilization. (R. at 402-18.) Lester reported severe depression with suicidal thoughts without a specific plan. (R. at 420, 421.) Lester reported that he angered easily and was irritable. (R. at 423.) He also reported that he isolated himself from others, including his own family members. (R. at 423.) Lester was diagnosed with major depressive disorder and treated with medications and counseling. (R. at 419.) Lester left inpatient treatment against medical advice on November 14, 2008. (R. at 402.)

Based on the above, I find that substantial evidence does not support the ALJ's weighing of the psychological evidence. The ALJ stated that he gave Wyatt's and Steward's opinions little weight, in part, because they were inconsistent with the findings of the state agency psychologists. This is not supported by the record. In fact, the psychological opinions contained in the record are very consistent. All of the psychological experts consulted stated that Lester had difficulties in social functioning and in maintaining concentration, persistence or pace. (R. at 212, 232, 283-84.) Also, all the experts stated that Lester was limited to some extent in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an

unreasonable number and length of rest periods and to interact appropriately with the public and coworkers. (R. at 212, 219, 283-84.)

While the ALJ may have been entitled to reject Steward's opinion that Lester was "totally and permanently disabled," he is not free to simply disregard uncontradicted expert opinions in favor of his own opinion on a subject that he is not qualified to render. *See Young v. Bowen*, 858 F.2d 951, 956 (4th Cir. 1988); *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984). Because I find that the ALJ erred in rejecting Wyatt's and Steward's opinions, I further find that substantial evidence does not support the ALJ's findings regarding Lester's mental residual functional capacity.

Even if I had found that the ALJ's rejection of Wyatt's and Steward's opinions were supported by the record, I would find that the ALJ's findings regarding Lester's mental residual functional capacity is not supported by substantial evidence. While the ALJ took his findings regarding Lester's mental work-related abilities from Milan's narrative contained on his assessment, this statement and, thus, the ALJ's findings are contradictory to other information contained on the assessment. For example, on the assessment form Milan stated that Lester was moderately limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 218-19.) Without explanation, Milan then contradicted these findings by stating:

> He would be able to maintain regular attendance and be punctual, completing a normal workday and workweek without exacerbation of psychological symptoms. Moreover, he would not require special supervision in order to sustain a work routine.

(R. at 220.) If an ALJ is going to rely on a nonexamining state agency psychologist's assessment to provide substantial support for his findings, the assessment must support his findings and not be internally inconsistent.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist in the record to support the ALJ's weighing of the psychological evidence;

2. Substantial evidence does not exist in the record to support the ALJ's findings regarding Lester's mental residual functional capacity; and

3. Substantial evidence does not exist in the record to support the ALJ's finding that Lester was not disabled under the Act and was not entitled to DIB or SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Lester's and the Commissioner's motions for summary judgment, vacate the Commissioner's decision denying benefits and remand Lester's claims to the Commissioner for further development consistent with this report.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: February 28, 2011.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE